PD-1652-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/26/2015 12:06:38 PM
Accepted 1/29/2015 1:58:42 PM
ABEL ACOSTA
CLERK

**PD – 1652-14**

**IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS**


**GARY PARKER
PETITIONER**

**V.**

**THE STATE OF TEXAS
RESPONDENT**


**<u>AMENDED PETITION FOR DISCRETIONARY REVIEW</u>
OF DECISION BY THE
THIRTEENTH COURT OF APPEALS
IN APPEAL NUMBER 13-13-00128-CR**


148TH  DISTRICT COURT
NUECES COUNTY, TEXAS
TRIAL COURT NUMBER 12-CR-2371-E(S1)
HONORABLE JUDGE GUY WILLIAMS, PRESIDING


FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

VIRGINIA KOBLIZEK BURT
Attorney at Law
P.O. Box 717
Sinton, Texas 78387
(361) 877-2048
virginiak.burt@gmail.com
State Bar No. 00784411
Attorney for GARY PARKER

**ORAL ARGUMENT NOT REQUESTED**

# CERTIFICATE OF PARTIES AND COUNSEL

A complete list of the names and addresses of all parties to the trial court's final judgment and their counsel is as follows:

***Appellant***

Gary Parker
Last Known Address from
Texas Department of Criminal Justice

***Counsel for the State of Texas***

MS. COURTNEY HANSEN
SBOT NO. 2406819900
ASSISTANT DISTRICT ATTORNEY
901 Leopard, Rm. 206
Corpus Christi, Texas 78401
Phone: (361) 888-0410

***Trial counsel for Appellant***

MR. JAMES L. STORY
SBOT NO. 2400068
McLemore, Reddell, Ardoin & Story, P.L.L.C.
8128 Leopard Street
Corpus Christi, Texas 78409
Phone: (361) 883-5200

## Appeal counsel for Appellant

Mrs. Virginia Koblizek Burt
Attorney at Law
SBN: 0784411
P.O. Box 717
Sinton, Texas 78387
virginiak.burt@gmail.com
Telephone: 361-877-2048

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES AND COUNSEL--------------------------2

INDEX OF AUTHORITIES-------------------------------------- 5

STATEMENT REGARDING ORAL ARGUMENT---------------------- 6

STATEMENT OF CASE----------------------------------------6

STATEMENT OF PROCEDURAL HISTORY---------------------- 6

GROUNDS FOR REVIEW ------------------------------------ 7

GROUND ONE PRESENTED FOR REVIEW-----------------------------8
**THE THIRD PRONG OF THE *KEETER* TEST FOR NEWLY DISCOVERED EVIDENCE DOES NOT STRICTLY AND NARROWLY DENY ALL IMPEACHABLE EVIDENCE WITHOUT CONSIDERATION THAT THE NEW EVIDENCE EXONERATES THE APPELLANT.** (RR v. 3, p. 24-35; RR v. 5, p. 12-32)

REASONS FOR REVIEW

    *A.  The Court of Appeals decision was in direct conflict with decisions of the Court of Criminal Appeals on the same issue under TEX.R.APP.P. 66.3(c)*------------------------*8*

    *B.  The court of appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise in supervision by this Court*------------15

GROUND TWO PRESENTED FOR REVIEW--------------------------16
**ALTHOUGH A PROSECUTOR MAY VOUCH FOR THE CREDIBILITY OF A WITNESS IN A DIRECT RESPONSE TO AN ARGUMENT BY THE DEFENSE, THE EXCEPTION DOES NOT INVITE THE BOLSTERING OF THE ENTIRE CAST OF STATE'S CASE-IN-CHIEF, ALLOWING THE PROSECUTOR TO IMPOSE HER PERSONAL BELIEFS THAT ALL OF HER WITNESSES WERE CREDIBILE AND TRUTHFUL.** (RR v. 3, p. 73-82)

<u>REASON FOR REVIEW</u>

***A. The Court of Appeals decision was in direct conflict with decisions of the Court of Criminal Appeals on the same issue under TEX.R.APP.P. 66.3(c)***------------------------16

PRAYER ------------------------------------------------------------------23

CERTIFICATE OF SERVICE ------------------------------------------24

CERTIFICATE OF COMPLIANCE----------------------------------24

<u>APPENDIX</u>
Opinion from Thirteenth Court of Appeals *issued* November 13, 2014

# INDEX OF AUTHORITIES

*Strickland v. Washington.* 466 U.S. 668, 687 (1984)------------------22

**STATE CASES**
COURT OF CRIMINAL APPEALS

*Carsner v. State,* 444 S.W.3d 1 (Tex.Crim.App. 2014)-----------------11

*Chapman v. State*, 503 S.W.2d 237 (Tex. Crim. App. 1974)---------19

*Hammond v. State*, 799 S.W.2d 741 (Tex. Crim. App. 1990)
 *cert. denied* 111 S.Ct 2912 (1991)----------------------------------21

*Hernandez v. State*, 726 S.W.2d 53(Tex. Crim. App. 1986)----------22

*Keeter v. State*, 74 S.W.3d 31 (Tex. Crim. App. 2002)-----------------11


COURT OF APPEALS

*Flores v. State*, 778 S.W.2d 526 (Tex. App. Corpus Christi, 1989)--20

*Sepulveda v. State,* 751 S.W.2d 667 (Tex. App. - Corpus Christi,
 1988, pet. ref'd)-------------------------------------------------------20

*Thomas v. State*, No. 01-11-00631-CR, 2013 WL 652719
 (Tex. App.—Houston [1st Dist.] Feb. 21, 2013, pet. ref'd)------19


**STATUTES**
Tex. Code Crim. Proc. Ann. Art. 40.001.------------------------------10, 16

Texas Penal Code, Section 22.01 -------------------------------------------5

Tex. R. App. P. 68.2(a)-----------------------------------------------------5

TEX.R.APP.P. 66.3(c)-------------------------------------------------------6

Tex.R.App.P.66.3(f).-------------------------------------------------------16

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary for the disposition of the issues and is thereby waived.

## STATEMENT OF THE CASE

A jury convicted the appellant Gary Parker of the felony offense of Assault (Family Violence by impeding breath or circulation) under Section 22.01 of the Texas Penal Code, and further found beyond a reasonable doubt that the Defendant has been previously convicted of two felonies as alleged in the indictment and assessed the Defendant's punishment at thirty-five (35) years in the Institutional Division of the Texas Department of Criminal Justice.  (CR p. 3)

## STATEMENT OF PROCEDURAL HISTORY

The Thirteenth Court of Appeals affirmed this conviction in an unpublished Memorandum Opinion delivered on November 13, 2014.

No Motion for Rehearing was filed.

An extension of time to file this Petition for Discretionary Review was granted. *See* Tex. R. App. P. 68.2(a).

# GROUNDS FOR REVIEW

## GROUND ONE FOR REVIEW

**THE THIRD PRONG OF THE *KEETER* TEST FOR NEWLY DISCOVERED EVIDENCE DOES NOT STRICTLY AND NARROWLY DENY ALL IMPEACHABLE EVIDENCE WITHOUT CONSIDERATION THAT THE NEW EVIDENCE EXONERATES THE APPELLANT.** (RR v. 3, p. 24-35; RR v. 5, p. 12-32)

## REASONS FOR REVIEW

*A.* T*he Court of Appeals decision was in direct conflict with decisions of the Court of Criminal Appeals on the same issue. TRAP 66.3*

*B.   The court of appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise in supervision by this Court under Tex.R.App.P.66.3(f).*

## GROUND TWO FOR REVIEW

**ALTHOUGH A PROSECUTOR MAY VOUCH FOR THE CREDIBILITY OF A WITNESS IN A DIRECT RESPONSE TO AN ARGUMENT BY THE DEFENSE, THE EXCEPTION DOES NOT INVITE THE BOLSTERING OF THE ENTIRE CAST OF STATE'S CASE-IN-CHIEF, ALLOWING THE PROSECUTOR TO IMPOSE HER PERSONAL BELIEFS THAT ALL OF HER WITNESSES WERE CREDIBILE AND TRUTHFUL.** (RR v. 3, p. 73-82)

REASON FOR REVIEW

**A. The Court of Appeals decision was in direct conflict with decisions of the Court of Criminal Appeals on the same issue. TRAP 66.3**

## ARGUMENT

## GROUND ONE FOR REVIEW

**THE THIRD PRONG OF THE *KEETER* TEST FOR NEWLY DISCOVERED EVIDENCE DOES NOT STRICTLY AND NARROWLY DENY ALL IMPEACHABLE EVIDENCE WITHOUT CONSIDERATION THAT THE NEW EVIDENCE EXONERATES THE APPELLANT.** (RR v. 3, p. 24-35; RR v. 5, p. 12-32)

## REASONS FOR REVIEW

***A. The Court of Appeals decision was in direct conflict with decisions of the Court of Criminal Appeals on the same issue under TEX.R.APP.P. 66.3(c).***

The Thirteenth Court of Appeal's reliance on this Court's conclusion in *Carsner v. State,* 444 S.W.3d 1 (Tex.Crim.App. 2014), that Appellant's newly discovered evidence was merely impeachable and thus failed the third prong of the *Keeter* test for a new trial, is error and is in direct conflict with the prevailing law under the *Keeter* test.

Evidence Presented at the Motion for New Trial Hearing

8

Appellant Parker's verdict was based solely on the testimony of the complainant who testified at trial that she was assaulted by Parker. The complainant and Parker have been in a relationship on and off for the past 27 years and were legally married at one time, and have both had a volatile past together. The complainant testified at trial that her injuries were so bad after the assault that the whole side of her face turned black, and she was unable to work the next day. RR v. 3, p. 24. She told the jury, "[t]hey were – they was a lot darker the next day, and then down my jaw line it was all dark and on this side of my jaw. I couldn't even – they wouldn't let me work." RR v. 3, p. 24. She claimed that she went to work the next day, but had "to stay in the classroom because my supervisor said that I had too many facial injuries and my face was out to here". RR v. 3, p. 25. She testified that she was not allowed to perform her work duties because of her injuries and was sent home. RR v. 3, p. 26, 29, 31, 35.

However, Mr. Dane Smith, the complainant's work supervisor, testified at the motion for new trial hearing that he did not see any injuries on the complainant on that day. RR v. 5, p. 12. He testified that he never saw bruises on her face and at no time did he have to

9

send her home because of her injuries. RR v. 5, p. 16. He directly contradicted her testimony at trial. RR v. 5, 14-16. He testified that all of the events that the complainant had claimed in the trial were false. RR v. 5, p. 16.

Parker also offered the testimony of a former attorney who represented him on a felony theft charge brought by the same complainant. RR v. 5, p. 36. The attorney testified that during his investigation he found evidence showing that the complainant lied about the theft charges against Parker. The case was dismissed when the complainant failed to appear at the trial.

Argument and Authority

Appellant argues that the newly discovered evidence proves the complainant lied on the stand about the assault, enough to doubt the integrity of the jury's verdict, and a new trial should have been granted. Appellant also provided evidence that the complainant had made false accusations about him in a past.

The law in Texas allows for a new trial where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. Art. 40.001. (West, Westlaw through 2013 3d C.S.). The courts will grant a new trial based on newly discovered evidence

if all four prongs of the test set out in *Keeter* are met. A party seeking a new trial on the ground of newly discovered evidence must show (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence, (3) the new evidence is admissible and is not merely cumulative, corrobative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Keeter v. State*, 74 S.W.3d 31,37 (Tex. Crim. App. 2002); see also *Carsner v. State,* 444 S.W.3d 1 (Tex.Crim.App. 2014).

Under *Keeter*, the new evidence must not be merely cumulative, corrobative, collateral, or impeaching. *Id.* at 37. This ruling does not automatically exclude impeaching evidence as a hard and fast rule, but only if it is *merely* impeachment evidence that would not have a direct impact on the verdict. *Id.*

However, in direct conflict with the meaning of the rule in *Keeter*, the court of appeals relied on *Carsner*[1] to deny Appellant's relief, holding that since " [the] newly discovered evidence is based

---

[1] "The new evidence must be admissible and must not merely be impeaching, among other things." *Carsner,* 2014 WL 4722762.

11

on using this evidence solely to impeach the complainant, it fails the third prong of the *Carsner* test." *Carsner v. State,* 444 S.W.3d 1 (Tex.Crim.App. 2014). This Court has provided the *Keeter test* that dictates the requirements for a new trial. *Keeter v. State*, 74 S.W.3d at 37. In *Carsner,* the case was merely sent back to the court of appeals for failing to address every issue necessary to the disposition of the appeal, namely all of the four prongs set out in *Keeter.*

The court of appeals is misguided trying to use the holding in *Carsner* as a catch-all to deny an appellant's relief for *any* evidence that is newly discovered, that may also tend to be impeachable. By its' very nature, any new evidence which tends to refute the charges against an accused, is inherently impeachable evidence as well. In this case, the newly discovered evidence directly refutes the assault charge and questions the integrity of the jury's verdict. The new evidence tended to exonerate Appellant and fortify his defense that he was innocent and the complainant was making another false claim against him.

Since the complainant's false testimony was the sole basis for the conviction, the fact that it may also be impeachable evidence

should not negate its' significance.   Appellant's Brief, p. 27.   The new evidence is more than "merely impeachable" because it substantiated, in a way no other evidence offered at trial did, the appellant's defense that the assault never occurred and the complaintant's accusations were false.

The court of appeals is deciding this case through the key hole of a door and not grasping the larger legal significance of the new evidence.  The newly discovered evidence established the appellant's innocence and cooberated his defense, which he held throughout the trial, that no assault had ever taken place.   In addition, the complainant had a history of making false claims against him.  The additional evidence showing that the complainant had made false allegations about a felony theft charge against the appellant in a previous case dismissed the year before, was also coorabarating evidence that the charges against the appellant were false.  The trial court's ruling denied the appellant of evidence of a motive to fabricate the charges against him and harm was shown.

Appellant has been wrongly convicted of a false accusation brought against him.  The newly discovered evidence tended to prove his innocence and also established proof that the complainant had

lied before in a previous case against him, that was rightly dismissed. It would be illogical for *Carsner* to stand for the premise that newly discovered evidence tending to prove an accused's innocence cannot withstand the third prong of the *Keeter* test if it also serves as impeachment evidence as well.

Newly discovered evidence that tends to prove an accused's innocence cannot be systemically dismissed by *Carson*, just because it may also serve to impeach the complaining witness's testimony. When the newly discovered evidence establishes the appellant's innocence, and directly contradicts the essential element of the crime, it is a far cry from being "merely impeachment evidence". See Opinion, p. 4-5.

A proper analysis of the new evidence should be conducted in the spirit of the statute, "that a new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial". Tex. Code Crim. Proc. Ann. Art. 40.001 (West, Westlaw through 2013 3d C.S.); *see also Keeter v. State*, 74 S.W.3d at 37; *see also* Opinion p. 2. The new evidence provided by Appellant tending to prove his innocence should be adequate for a new trial, highlighting the fact that the complainant had made false

allegations against him in the past. The legal ramifications from the new evidence make it more than likely that a different outcome could have resulted in another trial, thus meeting the third and fourth prong of the *Keeter* test. [2]

**B. The court of appeals has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise in supervision by this Court under Tex.R.App.P.66.3(f).**

Under the specific circumstances of this case, the impossibility that newly discovered evidence proving Appellant's innocence is not enough for a new trial under the statute is a daunting display of unsound legal reasoning and lack of judicial fair-mindedness.

Many cases have demonstrated the notion that newly discovered evidence favorable to the accused should warrant a new trial. *See* Appellant's Brief, p. 19-26. The court of appeal's denial of any meaningful appellate review of Appellant's legally preserved error is so far departed from the accepted and usual course of judicial proceedings as to call for an exercise in supervision by this Court under Tex.R.App.P.66.3(f).

---

[2] The court of appeals assumed that Parker established the first two prongs under *Carsner v. State*, PD-0153-14, 2014 WL 4722762, at *2 (Tex. Crim. App. Sept. 24, 2014). Opinion, p. 4.

15

Texas statute dictates that a new trial shall be granted an accused where "material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. Art. 40.001. (West, Westlaw through 2013 3d C.S.). The facts of this case illustrate that the new evidence was more than "merely impeachable", but had a direct impact on the jury's verdict. The actions of the court of appeals is so far departed from the usual judicial proceedings that the issue warrants a review by this Court under TEX.R.APP.P. 66.3(f) and provides a compelling reason for granting appellants petition for discretionary review.

## GROUND TWO FOR REVIEW

**ALTHOUGH A PROSECUTOR MAY VOUCH FOR THE CREDIBILITY OF A WITNESS IN A DIRECT RESPONSE TO AN ARGUMENT BY THE DEFENSE, THE EXCEPTION DOES NOT INVITE THE BOLSTERING OF THE ENTIRE CAST OF STATE'S CASE-IN-CHIEF, ALLOWING THE PROSECUTOR TO IMPOSE HER PERSONAL BELIEFS THAT ALL OF HER WITNESSES WERE CREDIBILE AND TRUTHFUL.** (RR v. 3, p. 73-82)

## REASON FOR REVIEW

*A. The Court of Appeals decision was in direct conflict with decisions of the Court of Criminal Appeals on the same issue under TEX.R.APP.P. 66.3(c).*

The prosecutor's imposition of her personal beliefs regarding the credibility of all of the witnesses in the state's case-in-chief was not invited by Parker's counsel, as the exception dictates. The court of appeals decision was in direct conflict with the prevailing cases of this Court of Criminal Appeals which do not allow for the improper bolstering of a witness's credibility. The court of appeals erred in holding that counsel's failure to object to the admission of the testimony was not deficient.

During final argument, the prosecutor made several improper remarks to the jury about the veracity of the state's witnesses that constituted reversible error, and trial counsel failed to make an objection each time the state improperly bolstered the witnesses. The State only called three witnesses in the case-in-chief: the arresting officer, the investigating detective and the victim. During closing argument, the prosecutor improperly commented on the veracity of every witness, including the complainant. The prosecutor improperly attached her personal belief to the truthfulness of each witness, and the effect was to unlawfully bolster the credibility of the witnesses with unsworn testimony.

The prosecutor's remarks went unchecked as she argued to the jury that the police officer had "*no reason to tell you a lie*" and "*[h]e has absolutely nothing to gain from coming in here and saying that, because his job is on the line. There's no reason for him to lie about that*".

The prosecutor also commented, without objection, on the veracity of the detective in the case, arguing "*[a]nd she didn't lie to you today. She didn't say that she remembered it when she didn't. She just was honest with you and straightforward*".

More significantly, the prosecutor gave her opinion before the jury that the complainant "*was honest with you about [her testimony]*". RR v. 3, p. 76, line 12-16. [emphasis added]

Appellant alleged ineffectiveness based on his counsel's failure to object to the prosecutor's comments in closing argument bolstering the credibility of the State's witnesses. Appellant was prejudiced by his counsel's failure to object after the prosecutor improperly injected her personal opinion by vouching for the credibility and truthfulness of every witness in the state's case-in-chief during final argument. The prosecutor's comments were so prejudicial that they warranted a reversal without a showing of harm.

In this case, the court of appeals denied Appellant's relief and relied on *Thomas* to conclude that the the improper comments were made in direct response to allegations by the defendant, and therefore an exception could be made to the rule. *Thomas v. State*, No. 01-11-00631-CR, 2013 WL 652719, at *8 (Tex. App.—Houston [1st Dist.] Feb. 21, 2013, pet. ref'd); *Chapman v. State*, 503 S.W.2d 237, 238 (Tex. Crim. App. 1974) (While "it is ordinarily improper for a prosecutor to vouch for the credibility of a witness during [her] argument, . . . if the argument in question was invited by argument of appellant's attorney, and was in reply thereto, no reversible error is shown").

Appellant's case can be distinguished from these cases, in that the prosecutor in both *Thomas* and *Chapman* did not impose their personal beliefs on the jury regarding the veracity of every witness in the state's case. It is one thing to allow a prosecutor to vouch for a witness's credibility in response to a direct negative attack on their truthfulness. However, there is no legal justification for the prosecutor to bolster every witness in her case-in-chief with her personal opinions and beliefs regarding all of the witnesses credibility. This distinction can be made from the cases relied on by

19

the state, wherein the prosecutor was able to vouch for the credibility of a particular witness without imposing their personal opinions and beliefs on the jurors.

In Appellant's case the prosecutor did more than just vouch for the credibility of a witness. The prosecutor imposed her personal beliefs before the jury, bolstering the credibility of *every* witness for the state, even though she could have denounced the appellant's claims without imposing her personal beliefs. The prosecutor's improper bolstering was especially harmful to Appellant because his conviction was based solely on the testimony of the complainant. *See Flores v. State*, 778 S.W.2d 526 (Tex. App. Corpus Christi, 1989)( The case was reversed for improper argument by the prosecutor where the prosecutor argued that the state would not have brought the case if the victim's testimony was not true. The error was not harmless beyond a reasonable doubt where the victim's testimony was the only evidence against the defendant. ); *see also Sepulveda v. State,* 751 S.W.2d 667 (Tex. App. - Corpus Christi, 1988, pet. ref'd) The prosecutor made improper comments that bolstered the testimony of the complainant, which was especially egregious in this case, since the complainant's testimony was the

20

sole basis of the conviction and she had made false accusations against Appellant in the past. *See supra.* The error was not harmless beyond a reasonable doubt where the complainant's testimony was the sole basis for the conviction.

Although this Court allows some leeway for the prosecution to vouch for the credibility of a witness in a direct response invited by the appellant's argument, it does not allow for the bolstering of the state's entire case-in-chief, which was not a proper reply to any arguments made by the defense.

Appellant received ineffective assistance of counsel where counsel failed to object to the prosecutor's expressing his opinion of each witness's credibility. The prosecutor's argument, at the very least, would have required an instruction to disregard. *Hammond v. State*, 799 S.W.2d 741 (Tex. Crim. App. 1990) *cert. denied* 111 S.Ct 2912 (1991)(Error was harmless, and the conviction was affirmed where there was prompt instruction to disregard and the evidence against the defendant was "fairly compelling"). Under the *Hammond* analysis, in this case there was no prompt instruction to the jury to disregard and the evidence against the appellant was by no means "fairly compelling". In fact, in Appellant's case, the complainant's

testimony was the sole basis for his conviction, and there was evidence that she had made false claims against him in the past.

The prosecutor's imposition of her personal beliefs regarding the credibility of all of the witnesses in the state's case-in-chief was not invited by Parker's counsel, the remarks were improper, and the court of appeals erred in holding that counsel's failure to object to the admission of the testimony was deficient. Thus, the first prong of *Strickland* has been satisfied that defense counsel's performance was deficient and Appellant showed that his counsel made errors so serious that counsel was not functioning at an objective standard for adequate legal representation guaranteed by the Sixth Amendment. *Strickland v. Washington.* 466 U.S. 668, 687 (1984); *see Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (en banc) (adopting *Strickland* as applicable standard under the Texas Constitution).

The end result in this case reveals that Appellant's conviction was based on false testimony that the state capitalized on during final argument. Since the complainant's testimony was the only evidence against the appellant, and her credibility was crucial to the case, the error was not harmless. The improper jury argument requires a

reversal of Appellant's conviction, for which he is entitled to a new trial.

## PRAYER

WHEREFORE PREMISES CONSIDERED, the Petitioner prays that this Honorable Court grant discretionary review of the decision of the Court of Appeals herein and that the Judgment of the Court of Appeals and Trial Court be reversed and the indictment and prosecution against Petitioner herein be dismissed or this cause be remanded for a new trial.

RESPECTFULLY SUBMITTED,

/s/Virginia Koblizek Burt
VIRGINIA KOBLIZEK BURT
Attorney at Law
P.O. Box 717
Sinton, Texas 78387
361-877-2048
virginiak.burt@gmail.com
SBN: 00784411
ATTORNEY FOR GARY PARKER

23

## CERTIFICATE OF SERVICE

I, Virginia K. Burt, do hereby certify that the Petition for Discretionary Review was e-filed on this the 26th day of January 2015, along with 10 copies mailed regular mail, to the clerk of the Texas Court of Criminal Appeals and a copy delivered to the Nueces County District Attorney's office, Appellate Section, and a copy mailed to the current TDCJ address of the Petitioner, Gary Parker.

/s/Virginia Koblizek Burt
VIRGINIA KOBLIZEK BURT

## CERTIFICATION OF COMPLIANCE

Now comes counsel of record, Virginia K. Burt, for the Appellant, GARY PARKER, in the above styled and numbered cause, and hereby certifies that counsel is in compliance with Texas Rules of Appellate Procedure 9.4(i)(3), and I certify that the number of words in this petition, excluding those matters listed in Rule 9.4(k)(1) is  2, 989.

/s/ Virginia K. Burt
VIRGINIA K. BURT

# NUMBER 13-13-00128-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**GARY PARKER, Appellant,**

**v.**

**THE STATE OF TEXAS, Appellee.**

**On appeal from the 148th District Court**

**of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Memorandum Opinion by Justice Rodriguez**

Appellant Gary Parker challenges his conviction for family violence assault by impeding breath or circulation, a third-degree felony.1 *See* TEX. PENAL CODE ANN. §

1 Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4. 22.01(b)(2)(B) (West, Westlaw through

2013 3d C.S.). The jury returned a guilty verdict. For enhancement purposes, the jury found that Parker was a habitual felony offender, *see id.* § 12.42 (West, Westlaw through 2013 3d C.S.), and sentenced him to thirty-five years in the Institutional Division of the Texas Department of Criminal Justice. By four issues, Parker contends: (1) the trial court abused its discretion in denying his motion for new trial based on newly discovered evidence; (2) the State's witness Jacqueline Luckey was not qualified as a fingerprint expert; (3) the prosecutor's closing argument constituted reversible error; and (4) trial counsel provided ineffective assistance. We affirm.

## I. MOTION FOR NEW TRIAL

By his first issue, Parker contends that the trial court abused its discretion when it denied his motion for new trial because newly discovered evidence proved that the complainant gave false testimony at trial about her injuries.

### A. Applicable Law and Standard of Review

"A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West, Westlaw through 2013 3d C.S.). In order to be entitled to a new trial on the basis of newly

discovered evidence, the defendant must satisfy the following four-pronged test:

(1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

(2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and, (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Carsner v. State*, PD-0153-14, 2014 WL 4722762, at *2 (Tex. Crim. App. Sept. 24, 2014). "Motions for new trials on grounds of newly discovered evidence are not favored by the courts and are viewed with great caution." *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987) (en banc); *see Moreno v. State*, 1 S.W.3d 846, 852–53 (Tex. App.—Corpus Christi 1999, pet. ref'd).

An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was clearly erroneous and arbitrary. A trial court abuses its discretion if no reasonable view of the record could support the trial

court's ruling. This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling. The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement.

*Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *see Celis v. State*, 354 S.W.3d 7, 21 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013).

**B. Discussion**

**1. Evidence Presented at the New-Trial Hearing**

Dane Smith, the complainant's work supervisor, testified at the new-trial hearing that he did not see any significant injuries on the complainant when she came to work the day after the alleged assault. Parker asserts that this testimony directly contradicts the following trial testimony of the complainant: "[My face] was a lot darker the next day, and then down my jaw line it was all dark and on this side of my jaw. I couldn't even—they wouldn't let me work." Parker argues that this newly discovered evidence proved the complainant lied on the stand, specifically about not going to work the day following the incident and about the seriousness of her injuries.

Parker also offered the testimony of a former attorney who represented him on a felony theft charge brought by the same complainant. The attorney testified that during his investigation he found evidence showing that the complainant lied about the theft charges against Parker. The case was dismissed when the complainant failed to appear at the trial.

Parker also asserts that Robin Cassel, a detective with the Corpus Christi Police Department Family Violence Unit, provided testimony establishing that the complainant lied about her injuries. However, the State offered this referenced testimony during the trial of this case. It was not evidence that Parker discovered since trial. *See* TEX. CRIM. PROC. CODE ANN. art. 40.001 (West, Westlaw through 2013 3d C.S.). So we will not consider it in our review.

3 Because our discussion of the third and fourth prongs of the *Carsner* test are dispositive of this issue, we will assume without deciding that Parker established the first two prongs. *See Carsner v. State*, PD-0153-14, 2014 WL 4722762, at *2 (Tex. Crim. App. Sept. 24, 2014).

**2. *Carsner*'s Third Prong**3

29

"The rule is well settled that a new trial will not be granted for newly[ ]discovered evidence to impeach a witness." *Grate v. State*, 23 Tex. App. 458, 5 S.W. 245, 245–46 (Tex. App. 1887, no pet.). The court of criminal appeals recently repeated this proposition in the third prong of its test for admitting newly discovered evidence—the new evidence must be admissible and must not merely be impeaching, among other things. *Carsner*, 2014 WL 4722762, at *2; *see Strong v. State*, 138 S.W.3d 546, 556 (Tex. App.—Corpus Christi 2004, no pet.) ("His only arguments for the admission of the evidence were based on using it to impeach or corroborate. This fails the third prong of the [*Carsner*] test . . . ."); *see also Willingham v. State*, 897 S.W.2d 351, 358 (Tex. Crim. App. 1995) (en banc) ("Impeachment of a witness means adducing proof that such witness is unworthy of belief or credit."). So to the extent Parker's argument for the admission of the newly discovered evidence is based on using this evidence solely to impeach the complainant, it fails the third prong of the *Carsner* test. *See Carsner*, 2014 WL 4722762, at *2.

### 3. *Carsner*'s Fourth Prong

"[W]hen the newly discovered testimony, although tending to discredit or impeach a witness, is material and competent independent of its

30

impeaching tendency . . . , the fact that the testimony also impeaches a witness does not deprive the accused in a proper case of the right to a new trial." *Hale v. State*, 51 S.W.2d 611, 613 (Tex. Crim. App. 1932); *see Lawson v. State*, 206 S.W.2d 608, 609 (Tex. Crim. App. 1947) (op. on reh'g) (per curiam); *see also* TEX. CRIM. PROC. CODE ANN. art. 40.001. So if the fourth prong of the *Carsner* test is established—that the new evidence is probably true and will probably bring about a different result in a new trial, independent of impeachment—then the evidence is more than merely impeaching. *See Carsner,* 2014 WL 4722762, at *2; *see also* TEX. CRIM. PROC. CODE ANN. art. 40.001.

Addressing this fourth prong, Parker contends that the new evidence has been shown probably to be true; that there is nothing in the record to give reason to doubt the credibility of the supervisor whose testimony constituted the majority of the new evidence. And Parker asserts that the circumstances in this case make it very likely that the new evidence would have resulted in a different outcome. Being mindful that a new trial will be granted when the newly discovered evidence is material and competent, independent of its impeaching tendency, *see Hale*, 121 Tex. Crim. at 368, 51 S.W.2d at 613; *see*

*also* TEX. CRIM. PROC. CODE ANN. art. 40.001, we still cannot conclude that this new evidence, even if true, would probably bring about a different result in a new trial. *See Carsner*, 2014 WL 4722762, at *2.

The complainant testified at trial that after Parker hit her "in the head, the eyes, [and] mouth" with "[h]is fist," and was choking her, she blacked out. The complainant then answered the following questions asked by the State:

Q. What's the first thing you remember when you woke up?

A. Coming to and Mr. Parker had his hands around my throat and telling me to get up and calling me vicious names, and he just kept punching and choking me and kicking me and—maybe after he did that I was like just sitting there trying to get my breath and stuff because I was shortness [sic] of breath and real dizzy.

. . . .

Q. Now, what—he used his hand and put it around your throat; is that right?

A. Yes. Uh-huh.

Q. And how many—did he use both hands or one?

A. Yes, both hands, because he was like just shaking me like a rag doll on the couch with both his hands.

Q. So, did he put pressure on your throat?

A. Yes. Uh-huh.

Q. Did that hurt?

A. Yes.

Q. Now, did that impede your normal breathing whenever that occurred?

A. Yes, it did.

Q. And can you tell the jury a little bit about how that felt?

A. Well, I had to like gasp for air, and when I finally got away from him—and then I just—like I started like hiccupping, but not—it wasn't hiccupping. It was just like probably gaping (sic) for air but really bad.

. . . .

Q. Okay. Now, in this [911] recording were you crying?

A. Yes, but I could hardly talk. It was—it was very difficult to talk, and I couldn't even remember my address, that's how shook up—and my head was hurting so bad . . . and my throat.

. . . .

Q. I'd like to go back over—to go back to whenever the Defendant was choking you. Can you demonstrate to the jury with your hands how his hands were on your neck?

A. He just had ahold of me like this, and I was like laying down on the couch, and he was just choking me and banging my head around like that.

Q. So you're indicating that he had both hands around your neck?

A. Yes.

Q. Do you know how long you couldn't breathe?

A. I don't know, three to five minutes, something like that. That's about how long he was—started choking on me and choking on me. And this side of my neck, right here, it—it hurt the worst on this side over here because—I don't—I don't know why, but it was just—had a big knot and stuff right here on this side of my neck right in there.

Q. Okay. Now I'd like to talk about some of the injuries that you sustained from the attack. . . . Do you see any injuries on that picture [State's Exhibit 4]?

A. Yes. Right here in my neck area, right there, and then my eye, and then there was a lump right there on my head. . . . See, there's the knot on my neck, right there, from him choking me. I don't know if you

34

can see that right in there, and then like—he had my—he had handprints right there on the side, right there by my hair.

Q. I'm holding up State's Exhibit 2, do you want to indicate on here for the jury where?

A. Okay. That's the knot on my neck, right here, and then there was hand marks right in through here where my hair is right there.

In addition, when the trial court admitted a photograph of the complainant's face and neck as a trial exhibit, Officer Mario Olivares, a police officer with the Corpus Christi Police Department who responded to the domestic disturbance call, testified that it depicted "some of the redness to the [complainant's] neck area." When asked to describe what he saw when he looked at the victim's neck, Officer Olivares replied, "We noticed some redness around her neck area and what would look to be some purplish markings also."

Parker was convicted of family violence when he intentionally, knowingly, or recklessly caused bodily injury to his former wife by impeding her normal breathing or circulation of the blood by applying pressure to her throat or neck or by blocking her nose or mouth. *See* TEX. PEN. CODE ANN. § 22.01(b)(2)(B). In light of the evidence that Parker caused bodily injury to the complainant by impeding her

35

normal breathing by applying pressure to her throat or neck, we cannot conclude that the evidence regarding the complainant's facial bruising or the timing of her return to work would likely have produced a different outcome, independent of its impeaching tendency. *See Carsner*, 2014 WL 4722762, at *2. Neither the absence of additional bruising on the complainant's face nor a different date when she returned to work would change any aspect of the trial testimony regarding the bruising on the complainant's neck.

## 4. Summary

Because a motion for new trial on grounds of newly discovered evidence is not favored by the courts and is viewed with great caution, *see Drew*, 743 S.W.2d at 225; *Moreno*, 1 S.W.3d at 852–53, and because we must view the evidence in the light most favorable to the trial court's ruling and not substitute our own judgment for that of the trial court, *see Riley*, 378 S.W.3d at 457; *Celis*, 354 S.W.3d at 21, we conclude that Parker has not shown that the trial court abused its discretion in denying his new-trial motion. Its ruling was well within the zone of reasonable disagreement. *See Riley*, 378 S.W.3d at 457; *Celis*, 354 S.W.3d at 21. We overrule Parker's first issue.

## II. QUALIFIED FINGERPRINT EXPERT AT THE PUNISHMENT PHASE

By his second issue, Parker argues that the evidence was insufficient to prove that he was the same person who had been convicted in the prior convictions relied upon by the State for enhancement purposes without a qualified expert to properly match his fingerprints. Based on Parker's arguments, we construe this issue as a challenge to the qualifications of Luckey, an identification clerk with the Identification Section of the Nueces County Sheriff's Office, whom the State presented as its fingerprint expert.

Parker's indictment contains two enhancement paragraphs pleading two prior felony convictions—both in Texas for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 12.42(d). During the punishment phase of the trial, the State offered into evidence penitentiary (pen) packets related to these prior offenses. Luckey testified that the fingerprints in the packets matched fingerprints she took from Parker. Defense counsel objected to the admission of one of the pen packets and asked to take Luckey on voir dire. After the voir dire examination, Parker objected that Luckey had not been qualified as an expert. The trial court overruled Parker's objection.

**A. Applicable Law and Standard of Review**

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702.

Thus, before admitting expert testimony under [r]ule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case.

*Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). "Qualification is distinct from reliability and relevance and, therefore, should be evaluated independently." *Id.*

"Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an

38

expert on a specific topic in a particular case." *Rodgers*, 205 S.W.3d at 527–28; *see Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *see also* TEX. R. EVID. 702; *Harrison v. State*, No. 2-02-339-CR, 2003 WL 21513618, at *3 (Tex. App.—Fort Worth July 3, 2003, no pet.) (mem. op., not designated for publication). "For this reason, appellate courts rarely disturb the trial court's determination that a specific witness is or is not qualified to testify as an expert." *Rodgers*, 205 S.W.3d at 528 n.9; *Wyatt*, 23 S.W.3d at 27. "In any event, the appellate court must review the trial court's ruling in light of what was before that court at the time the ruling was made." *Rodgers*, 205 S.W.3d at 528–29.

**B. Qualification**

At the time the trial court ruled that Luckey was an expert in the field of fingerprinting, the State had established the following:

• Luckey had been comparing fingerprints as an identification clerk in the Identification Section of the Nueces County Sheriff's Office since 1991;

• Luckey's daily duties included comparing inked fingerprints;

• Over the past nineteen years, she was trained by Lieutenant Fred Flores who had both national and state experience regarding fingerprint identification, working in fingerprinting for over thirty-five years, and receiving FBI and DPS training in that area;

• In 1993, Luckey took a forty-hour "Basic Fingerprints" course taught by Charles Parker, the supervisor of the fingerprint section of the Corpus Christi Police Department;

• Luckey is a member of the International Association for Identification;

• Prior to this trial, Luckey had testified twenty to twenty-five times as an expert in the area of fingerprint identification;

• Since 1991, Luckey received training every day at work; and

• Luckey compared thousands of fingerprints over the course of her identification job.

Luckey also testified that "[a] fingerprint is identification of a person," and that she had never found two people to have the same fingerprint. Luckey specialized in the area of inked prints, which she described as an ink impression taken off an ink pad and rolled onto the paper. When asked to explain the science of identifying or comparing fingerprints, Luckey responded,

First of all you've got to find [a pattern—find] out if it's a loop, a whirl, or a tentative arch or just an arch. . . . Then you start looking at the similarities. . . . And then once you find that, then you go from there to see what—you know, the ending ridge, the bifurcations, and the loops and the patterns of it. . . . Then after that, you start looking at the — you know, the same points at the same time on the print. . . . You can go up as high as 15 or 20 [points on a fingerprint] if you want.

Luckey agreed that this method of fingerprint comparison is generally accepted within the scientific community.

On cross-examination, when asked if she had been trained by the FBI or the State of Texas DPS, Luckey responded, "No." Luckey explained that "[t]he core is the middle of [the print]" and "[a] delta is

where you start counting your ridges to the core of your print." She did not know the definition of a "Galton point." Luckey explained that she compared the patterns of the prints to determine whether one print matched another.

Because the special knowledge that qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a combination of these things, *see* TEX. R. EVID. 702; *Wyatt*, 23 S.W.3d at 27, based on this evidence, we cannot conclude that the trial court abused its discretion when it permitted Luckey to testify as a fingerprint expert. We overrule this portion of Parker's second issue.

## C. Reliability and Relevance

While conceding that "since the use of fingerprint comparisons is a recognized method of proving the defendant is the person who committed the previous crimes, [he] is contesting [only] . . . the qualifications of the expert," Parker nonetheless appears to argue that Luckey's fingerprint testimony was neither reliable nor relevant. *See Vela*, 209 S.W.3d at 131. Specifically, Parker complains that Luckey failed to follow proper procedure for identifying Parker when she only matched Parker's fingerprints that she took the morning of

trial to the "known print" and not to the fingerprints in each of judgments from the pen packs.

Luckey testified that she did not compare the prints on the judgments with the one she took the morning of trial, but that she did make the following comparison:

All those judgments that he has, right, the known print, I checked them to that, all of them, at 9:00 o'clock when I got here. And then, when I—I mean, I fingerprinted him, I just went and compared them to my known prints that I had, since I had already compared them with those.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g) (en banc). And the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Taylor v. State*, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996) (en banc). "The legal basis of a complaint raised on appeal cannot vary from that raised at trial." *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

Parker did not object at trial on the ground that Luckey's fingerprint testimony was unreliable. He did not object that it was not relevant. His only objection to Luckey's testimony and to the exhibits admitted

in support of that testimony was that she was not qualified as an expert in the field of fingerprinting. *See id.* And even had he objected on the basis of reliability or relevance, we find no trial court ruling, either express or implied, on such an objection. *See Taylor*, 939 S.W.2d at 155. Parker did not preserve in the trial court any reliability or relevancy complaints for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Heidelberg*, 144 S.W.3d at 537; *Mosley*, 983 S.W.2d at 265. We overrule the remaining portion of Parker's second issue.

## III. IMPROPER BOLSTERING DURING THE PROSECUTOR'S CLOSING ARGUMENT AT THE GUILT/INNOCENCE PHASE

In his third issue, Parker complains that the prosecutor improperly bolstered the State's witnesses during closing argument. In sum, Parker asserts the following:

In this case, the State called three witnesses in its' [sic] case-in-chief: the arresting officer, the investigating detective and the victim. In final argument, the prosecutor was allowed to improperly comment on the veracity of every witness who testified in the [S]tate's case, including the [complainant]. The prosecutor was allowed to attach her personal belief to the credibility of each witness, and the effect was to bolster

the credibility of the witnesses with unsworn testimony, which is improper.

In order to preserve error relating to improper jury argument, a defendant must object to the jury argument about which he complains and pursue his objection to an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc) (holding that a "defendant's failure to object to a jury argument . . . forfeits his right to complain about the argument on appeal"); *Martinez v. State*, 951 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1997, no pet.); *see* TEX. R. APP. P. 33.1(a). Parker acknowledges that he did not object to these arguments at trial.

Because Parker failed to object to these statements made by the prosecutor during closing argument, he preserved nothing for our review. We overrule Parker's third issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, Parker contends that his trial counsel provided ineffective assistance when he failed to object to the prosecutor's closing argument regarding the credibility of the State's witnesses. The State responds that defense counsel was not ineffective because the prosecutor's argument was responsive to the argument presented

by Parker's trial counsel and therefore permissible. We agree with the State.

**A. Applicable Law and Standard of Review**

Proper jury argument generally falls within one of the following areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 750 (Tex. Crim. App. 2008). When examining challenges to a jury argument, a reviewing court must consider the complained-of argument in the context in which it appears. *Gonzalez v. State*, 337 S.W.3d 473, 483 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). And while "it is ordinarily improper for a prosecutor to vouch for the credibility of a witness during [her] argument, . . . if the argument in question was invited by argument of appellant's attorney, and was in reply thereto, no reversible error is shown." *Chapman v. State*, 503 S.W.2d 237, 238 (Tex. Crim. App. 1974); *see Thomas v. State*, No. 01-11-00631-CR, 2013 WL 652719, at *8 (Tex. App.—Houston [1st Dist.] Feb. 21, 2013, pet. ref'd) (same).

We review ineffective assistance of counsel claims under the two-pronged test articulated in *Strickland v. Washington*. 466 U.S. 668,

687 (1984); *see Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (en banc) (adopting *Strickland* as applicable standard under the Texas Constitution). The first prong of the *Strickland* test requires a showing that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The second prong of the *Strickland* test requires a showing that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* "To successfully assert that trial counsel's failure to object amounted to ineffective assistance, the [appellant] must show that the trial judge would have committed error in overruling such an objection." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Thomas*, 2013 WL 652719, at *9 ("The failure to object to argument that is not improper does not constitute ineffective assistance of counsel.").

**B. Closing Argument**

The prosecutor for the State opened the closing arguments at the guilt/innocence phase by emphasizing the elements of the offense

48

and the evidence that established those elements. Parker's trial counsel spoke next. In his closing argument, Parker's counsel questioned the credibility of the complainant and of the police officers who testified at trial. He began his argument by stating that "[the complainant's] testimony is not supported by the physical evidence." He referred to this case as one in which "someone is going to take the stand and either exaggerate, grossly exaggerate, or lie . . . ." After arguing that the photographs neither represented nor supported the complainant's testimony and that Detective Robin Cassel, a detective with the Corpus Christi Police Department Family Violence Unit, testified that she saw the complainant four days after the incident for reporting purposes and "didn't notice . . . anything about her," trial counsel explained that he wanted the jury "to see that [the complainant] is shading her testimony. She's . . . making things up." He argued that "hammering on this" was "the only way that [he would be] able to show [the jury] that [the complainant] is incredible. Her testimony is not to be believed. She is grossly exaggerating and/or making it up."

Trial counsel also argued that "when [the complainant] went in to see Detective Cassel four days later, okay, that's time enough for those

bruise[s] to come up, . . . but Cassel, she testified she didn't notice anything, you know, anything about her. Cassel didn't think to take any pictures of her because there was nothing there." In closing, trial counsel also urged that Officer Olivares, while trying to do the right thing, appeared to have "bolstered his testimony a little bit" when he testified about the photographs by saying, "Oh, yeah, [the injuries] looked worse in person."

In response, the prosecutor argued, in relevant part:

When you-all go back and make the difficult decision to determine what happened that day, I'm asking you to keep three things in mind: First, the victim is not on trial today. The Defendant over there is on trial for what happened that day. Secondly, the police work is not on trial. Although the police work is what brings you the evidence here today, just because we don't have every single piece of what we might have wanted does not mean that a crime did not occur, and we shouldn't penalize that victim for what a police officer may or may not have done. Additionally, the victim doesn't choose when and where they're [sic] assaulted. This victim didn't know she was going to be assaulted that night and had been drinking in her home, which she is allowed to do. If she had known that she was going to be assaulted,

50

she might not have been drinking. However, those are the facts of this case and that's what happened that night, and *she was honest with you about that.* So, I want you to keep all those things in mind when you're trying to figure out what really happened that night.

Now, let's talk about some of these injuries. The only thing that the Defendant is on trial here for today, but you've got to hear about everything, because everything happened that day, is choking. You heard from the officers [sic], who has absolutely nothing—no reason to tell you a lie, that he saw bruising in those pictures, but he also told you it's hard to see in those pictures, because when it's red and when you first have a bruise, they don't always photograph very well. He told you that. [*Officer Olivares*] *has absolutely nothing to gain from coming in here and saying that, because his job is on the line. There's no reason for him to lie about that.* So, defense counsel's insinuation that he's bolstering is honestly just ludicrous. He's here saying what he saw what happened that day because that's his job, and he doesn't want to lose his job. Additionally, you also heard testimony that you don't even often have these marks on choking victims. This is something that is good.

(Emphasis added.)

Later, in response, the State made the following reference to Detective Cassel:

Now, Detective Cassel said that [s]he did not recall if there were any injuries. That doesn't mean there weren't any, that means [s]he has no recollection whether or not there were or there weren't, so I just wanted to be clear on that point. Detective Cassel didn't remember. Her job is more, as she told you, to take the case, put it together, and present it to the District Attorney's office. That's not her main focus. Her main focus is making sure all that evidence is collected. And she didn't lie to you today. She didn't say that she remembered it when she didn't. *She just was honest with you and straightforward* and said, "You know what, I don't remember one way or the other."

During direct examination at trial, the following relevant exchange occurred between the State and Detective Cassel:

Q. Did—when the victim, or when [the complainant] came in and talked with you on the 17th, I believe—

A. 18th.

Q. —18th, were you able to observe any injuries at that time?

A. I don't recall seeing any injuries, but I remember she did tell me that.

52

Q. We can't get into anything that she specifically told you.

A. I don't remember seeing any injuries on her.

Q. Okay.

(Emphasis added.)

**C. Discussion**

Now on appeal, Parker alleges that counsel's representation was ineffective because he failed to object to portions of the prosecutor's comments in her responsive closing argument, which concerned the credibility of the State's witnesses. The italicized statements above, about which Parker complains, include the following: (1) "[the complainant] was honest with you about that."; (2) "[Officer Olivares] has absolutely nothing to gain from coming in here and saying that, because his job is on the line. There's no reason for him to lie about that."; and (3) "[Detective Cassel] just was honest with you and straightforward*."* Parker contends that these inappropriate remarks improperly bolstered witness testimony. He asserts that "their cumulative effect was outrageous and especially harmful."

When the complained-of comments are read in context, however, each of the State's arguments that a witness was credible responded to a credibility argument made by Parker's counsel. *See Chapman,*

503 S.W.2d at 238; *Gonzalez v. State*, 337 S.W.3d at 483. Because the State's responsive arguments were invited by Parker's counsel, they were not improper, and the trial court would not have committed error in overruling such an objection. *See Chapman*, 503 S.W.2d at 238; *McDuffie*, 854 S.W.2d at 216–17; *see also Martinez*, 330 S.W.3d at 900. Based on this analysis, counsel's failure to object to the admission of this testimony was not deficient, and the first prong of *Strickland* has not been satisfied. *See Strickland*, 466 U.S. at 687; *Thomas*, 2013 WL 652719, at *9; *Davis v. State*, 830 S.W.2d 762, 766 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). And because Parker must prove both prongs of *Strickland* by a preponderance of the evidence in order to prevail, we need not address the second prong. *See Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *see also* TEX. R. APP. P. 47.1. We overrule Parker's fourth issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ

Justice

Do not publish.

TEX. R. APP. P. 47.2(b).

Delivered and filed the 13th

day of November, 2014.